UNITED STATES of America, Appellee,

v.

Maria ALMONTE, Defendant, Appellant.

UNITED STATES of America, Appellee,

v.

Artemia FELIZ, Defendant, Appellant.

Nos. 90–1939, 90–2004.

United States Court of Appeals,
First Circuit.

Heard Sept. 9, 1991.

Decided Dec. 27, 1991.

Francis X. Mackey, Providence, R.I., for defendant, appellant Maria Almonte.

Scott A. Lutes, Providence, R.I., for defendant, appellant Artemia Feliz.

Margaret E. Curran, Asst. U.S. Atty., with whom Lincoln C. Almond, U.S. Atty., and James H. Leavey, Asst. U.S. Atty., Providence, R.I., were on brief, for appellee.

Before TORRUELLA, Circuit Judge, COFFIN, Senior Circuit Judge, and CYR, Circuit Judge.

TORRUELLA, Circuit Judge.

This appeal arises out of two related criminal cases. One of the defendants pled guilty to conspiracy to distribute cocaine, while the other was convicted by a jury of conspiracy to distribute, possession with intent to distribute, and distribution of cocaine. The defendant convicted by the jury appeals her conviction. The other appeals the appropriateness of her sentence. We affirm.

**FACTS**

In *United States v. Flete*, No. 90–1940, slip op. at 2–3, (1st Cir. Sept. 9, 1991), in an order dismissing the appeal involving a third co-defendant to the parties involved herein, we recited the salient facts to these appeals as follows:

On March 20, 1990, an informant for the Pawtucket Police Department, working with the FBI, arranged for the purchase of a kilogram of cocaine from Artemia Feliz ("Feliz"). The sale was to take place the following day. On March 21, 1990, the informant entered the Glency Market which is managed by Feliz and owned by her and/or her husband. The quantity of cocaine was reduced to 1/2 kilogram. Feliz directed William Flete ("Flete") to leave the market and obtain the cocaine. Flete left and went to the first floor apartment located at 173 Colfax ("173 Colfax"). A short time later, Flete and Maria Almonte ("Almonte") left 173 Colfax and returned to the Glency Market. In a restroom of Glency's Market[,] Flete delivered 449.3 grams of cocaine to the informant.

The informant was wearing a monitoring device and when the above-mentioned delivery was made, agents and police officers converged on the market and placed Feliz and Flete under arrest. Agents, who had stalked out 173 Colfax, which is across the street from Glency's Market, entered the first floor apartment of 173 Colfax to secure it pending a search warrant.

Almonte was brought back to 173 Colfax. Despite having received Almonte's permission to search, the agents did not search the premises. United States Magistrate Jacob Hagopian subsequently signed search warrants for 173 Colfax and Glency's Market. The search warrants were executed later that afternoon. Inside the bedroom of Flete and Almonte's apartment, agents seized in excess of $4,565 in U.S. currency and 362 grams of cocaine and 'cutting' material.[1]

1. A jar containing inositol was found in the closet shared by Almonte and Flete. Inositol is

In a pouch, with Flete's identification inside, agents seized 8.4 grams of crack. This pouch was found in the closet of the bedroom in which the above-mentioned cocaine and money were found. A search of Glency's Market revealed a loaded '357' magnum pistol and an Ohaus electronic scale.

At the time of her arrest, Feliz was standing behind the cash register counter in the market. The loaded .357 magnum pistol was found in a covered box underneath the counter. Flete, Almonte and Feliz were charged in a three count indictment with (1) conspiracy to distribute cocaine in violation of 21 U.S.C. § 846; (2) distribution of cocaine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; and (3) possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.

On June 20, 1990, Feliz pled guilty. Flete also pled guilty. A jury convicted Almonte of all counts. Feliz and Almonte appeal herein. Being that their appeals raise unrelated issues, we will address each separately.

### A. *Maria Almonte (No. 90–1939)*

On appeal Almonte raises two issues. She first claims that the cocaine seized at 173 Colfax should have been suppressed as "fruit of an illegal search and seizure" under the Fourth Amendment to the Constitution. Almonte argues that warrantless entries are justified when agents have a reasonable belief that there are persons inside and a reasonable belief that those persons are aware of the arrest outside the premises so that they might destroy evidence. *United States v. Schaper*, 903 F.2d 891, 894 (2d Cir.1990). She asserts that, in the instant case, the officers staking out 173 Colfax had absolutely no evidence, nor any reason to believe, that anyone was inside the house. She claims that, as a result of their improper entry, the cocaine subsequently seized pursuant to the warrant should have been suppressed.

The government responds that the cocaine found at 173 Colfax was not suppressible on two grounds. First, the initial entry into the house was for the purpose of securing the premises. It claims that exigent circumstances, namely Flete's suprise entry to 173 Colfax to get the cocaine, justified the government's initial sweep of the apartment so that evidence could be secured and other possible defendants detained. According to the government, prior to Flete's trip from the market to 173 Colfax, the agents on the scene had no reason to believe that 173 Colfax Street would be the site of any illegal activity. It was therefore reasonable to believe that anyone inside the apartment would have been alerted by the arrest and could have destroyed evidence in 173 Colfax. In short, the government argues that these exigent circumstances justified the warrantless search.

Unless exigent circumstances exist, warrantless searches are impermissible. *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). The test for determining exigent circumstances in this Circuit, "is whether there is such a compelling necessity for immediate action as will not brook the delay of obtaining a warrant." *United States v. Adams*, 621 F.2d 41, 44 (1st Cir.1980). We agree with the government that exigent circumstances, namely the commotion at the market resulting from the convergence of the agents, justified the initial sweep. Moreover, in light of the subsequently obtained warrant discussed below, the government need not rely on the initial sweep to sustain a conviction.

Second, the government contends that the subsequent, independently obtained warrant obviates the need to consider any illegality in the initial search. The government states that no incriminating evidence was found until after the warrant was issued. Thus the search was legal and the cocaine was properly admitted into evidence at trial. On this point, we also agree with the government.[2]

---

commonly used by cocaine dealers to cut the purity and increase the volume of cocaine.

**2.** We also note that Almonte signed a consent which would have allowed the agents to search

When the agents conducted their initial sweep of the apartment, the record does not reflect that they observed any incriminating evidence. In fact the warrant affidavit subsequently issued to search 173 Colfax made no mention of the prior entry or any observations resulting from that entry. As explained in *Nix v. Williams*, 467 U.S. 431, 443, 104 S.Ct. 2501, 2509, 81 L.Ed.2d 377 (1984):

> [T]he interest of society in deterring unlawful police conduct and the public interest in having juries receive all probative evidence of a crime are properly balanced by putting the police in the same, not a *worse*, position that they would have been in if no police error or misconduct had occurred.... When the challenged evidence has an independent source, exclusion of such evidence would put the police in a worse position than they would have been in absent any error or violation.

The cocaine seized in 173 Colfax was obtained by an independent source. It resulted from a search conducted pursuant to a legal warrant. Thus the cocaine was legally obtained and the district court's holding was proper in not suppressing that evidence.

## SUFFICIENCY OF THE EVIDENCE

Almonte also claims that her conviction should be reversed because there was insufficient evidence produced at trial to support a conviction. Specifically she claims that the government was required to prove that she knowingly possessed the cocaine. She acknowledges that constructive possession is enough. Almonte argues that the government failed to establish that she had the requisite dominion and control over the cocaine and the premises which would justify a conviction. According to Almonte, because she neither said nor did anything overt to connect her with the cocaine, the government did not prove its case.

## STANDARD OF REVIEW

Almonte filed a motion for judgment of acquittal and a motion for a new trial. The

173 Colfax. However, the agents postponed the

motions were denied. In reviewing the denial of a judgment of acquittal and/or motion for a new trial, "the standard of appellate review on sufficiency of evidence is 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Blair*, 886 F.2d 477, 478 (1st Cir.1989) (citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)). *See also United States v. McHugh*, 769 F.2d 860, 867 (1st Cir.1985). Framed another way, the inquiry we make "[i]s [whether] the evidence adduced at trial [is] sufficient to support a rational determination of guilty beyond a reasonable doubt?" Article, *A Basic Guide to Standards of Judicial Review*, 33 S.D.L.Rev. 469, 478 (1988). Viewing the record before us, there is no doubt that a rational trier of fact could have found that the essential elements of the crimes have been proven beyond a reasonable doubt and the conviction must stand.

The essential elements which must be proven beyond a reasonable doubt to establish a violation of 21 U.S.C. § 841(a)(1) are that Almonte

> knowingly possessed the cocaine found in the apartment at [173 Colfax]. The government need not prove actual possession; constructive possession is sufficient.... To show constructive possession, the government must prove that [Almonte] had dominion and control over the area where the contraband was found.... Constructive possession may be shown by direct or circumstantial evidence, but mere association or mere presence with one who possessed contraband is not enough. Finally, knowledge of possession may similarly be inferred by demonstrating dominion and control over the area where contraband is found.

*United States v. Barnes*, 890 F.2d 545, 548 (1st Cir.1989), *cert. denied*, 494 U.S. 1019, 110 S.Ct. 1326, 108 L.Ed.2d 501 (1990).

search until a warrant was procured.

The record is replete with evidence supporting the jury's verdict of guilt. The apartment, 173 Colfax, was the residence of Almonte and Flete. They shared a bedroom. Within the bedroom, over $4,500 in U.S. currency, and 8.4 grams of crack cocaine were found hidden under the carpet, in a suit pocket and in a camera bag inside the closet shared by Almonte and Flete. A "cutting agent," inositol, was also found on a shelf in that closet. In the top drawer of a dresser in the bedroom, a plastic bag containing 362.8 grams of cocaine was found. The dresser drawer contained both men's and women's lingerie and underwear. Almonte's passport was also found in the room. Finally, and perhaps most telling, Almonte accompanied Flete to Glency's Market when the sale of the 449.3 grams of cocaine was made. She stood outside the door of the bathroom while the transaction took place.

It is clear to us that a reasonable jury could have found that Almonte knowingly had dominion and control of the cocaine, that she constructively possessed—if not possessed—the cocaine in her apartment and that she was part of the distribution transaction which culminated in her arrest. The fact that there could be another explanation does not preclude this finding. "The prosecution ... need not exclude every reasonable hypothesis of innocence so long as the total evidence permits a conclusion of guilt beyond a reasonable doubt." *McHugh*, 769 F.2d at 867 (citing *United States v. Gabriner*, 571 F.2d 48, 50 (1st Cir.1978)). Viewing the record in the light most favorable to the prosecution, we agree that the jury had before it sufficient evidence to support a guilty verdict beyond

a reasonable doubt. Thus the convictions under 21 U.S.C. § 841(a)(1) are sustained.

With regard to the conspiracy count, under 21 U.S.C. § 846, the government need only prove that Almonte willfully became part of the conspiracy to sell cocaine, and that she or any coconspirator committed any act in furtherance of the conspiracy. *See United States v. Latham*, 874 F.2d 852, 863 (1st Cir.1989). In light of the above stated facts, we again conclude that the jury verdict was proper.[3] Thus the convictions stand.

## B. *Artemia Feliz (No. 90–2004)*

As part of a plea agreement, Feliz pled guilty to Count Two of the indictment—distribution of a controlled substance. Counts One and Three were dismissed. At sentencing Feliz received a two point enhancement, pursuant to Sentencing Guideline § 2D1.1(b)(1) because of the gun which was found hidden in a box under the counter at Glency's Market. The guideline provides that "[i]f a dangerous weapon (including a firearm) was possessed during commission of the offense, increase by 2 levels." Commentary 3 of the guideline states in part:

> The enhancement for weapon possession reflects the increased danger of violence when drug traffickers possess weapons. The adjustment should be applied if the weapon was *present*, unless it is clearly improbable that the weapon was connected with the offense. For example, the enhancement would not be applied if the defendant, arrested at his residence, had an unloaded hunting rifle in the closet (emphasis ours).

---

**3.** We note that in sentencing Almonte, the district judge did not consider the 449.3 grams of cocaine sold at Glency's Market. Only the 362.8 grams found in 173 Colfax were considered in calculating Almonte's base level sentence. Yet, the court had previously denied Almonte's motions for a new trial and acquittal. It is arguable that the judge implicitly granted the acquittal with respect to the distribution charge.

If the acquittal was not granted then the district judge had no authority to deviate from the Sentencing Guidelines without assigning specific reasons. *See United States v. Bianco*, 922

F.2d 910, 914 n. 4 (1st Cir.1991). However, for obvious reasons, Almonte has not appealed the failure of the district judge to consider the 449.3 grams at sentencing. Nor has the government. The government merely asks that we affirm the conviction and sentence and, only in the alternative, that we remand the case so that the judge can clarify the sentence. Being that neither party has raised the issue on appeal, we lack jurisdiction over the issue. Thus we refrain from addressing the apparent inconsistencies in the denial of Almonte's post trial motions and the sentence imposed.

On appeal Feliz raises two issues. First she contends that the enhancement was improper because the government failed to prove that she possessed the firearm as required by the Guideline. Feliz claims that there is no showing that she even had knowledge that the gun was under the counter when the transaction took place. Finally, Feliz contends that the trial judge erred in failing to state his reasons for the enhancement. We disagree.

## THE ENHANCEMENT

■ The Commentary to the guideline § 2D1.1(b)(1) is unequivocally clear in that the enhancement applies "if the weapon is present" when the transaction occurs. Enhancement by presence of the weapon however is qualified. As is evidenced by the example given in Commentary 3, if it is clearly improbable that the weapon is connected with the transaction, then there is no enhancement. In sentencing Feliz, the district judge stated that it was not clearly improbable that the gun was connected with the offense. The record on appeal supports this conclusion.

■ The gun, a .357 magnum, was hidden in a box underneath the counter where Feliz was working. Contrary to her contention on appeal, her testimony on direct examination proves that she had knowledge of the gun's presence at the time of the transaction.

## DIRECT EXAMINATION
## BY MR. LUTES:

.    .    .    .    .

Q.: Can you explain to the Court about that revolver, why it was there, who it belonged to?
A.: That revolver is there because we are in a bad neighborhood and the gun is there for protection. Various times we've been robbed.

.    .    .    .    .

I don't have any date at this time but I know that I had it there since one time that we have been robbed.

She later acknowledged that the gun was there "approximately two weeks" prior to the date of the transaction.

This testimony irrefutably establishes that Feliz had knowledge of the gun's presence. Furthermore, nothing suggests that it was clearly improbable that she would not have used the gun during the drug transaction had she thought it necessary. We have previously held that it is not unreasonable to believe that drug distributors who have loaded guns nearby are likely to use the guns in committing or attempting to commit drug offenses. *See United States v. Wheelwright*, 918 F.2d 226, 227 (1st Cir.1990). The fact that the principal reason for the gun being there was because of previous robberies is of little if any relevance. Presence of a gun is the controlling element triggering the enhancement. Therefore, we agree with the district court that there was no showing that it was clearly improbable that the gun would not be used in the transaction.

## REASONS FOR THE ENHANCEMENT

■ With regard to Feliz' second argument, we simply state that the district court complied with sentencing requirements. The sentencing enhancement was within the Sentencing Guidelines. As we have held previously, "[u]nlike guideline sentencing range departures, the sentencing court is not required to state special findings or to assign specific reasons for sentence enhancements within the guideline range." *United States v. Bianco*, 922 F.2d 910, 914 n. 4 (1st Cir.1991). The sentence imposed was within the Guideline range and was thus proper.[4]

## CONCLUSION

We uphold the conviction of Almonte in that, (1) the evidence produced at trial was not suppressible as it was legally procured

---

4. In any event, as noted above, the district judge did state reasons for his enhancement. He specifically stated that there was no showing that it was improbable that the gun would not be used in the transaction. Thus he applied the enhancement. Because the district judge gave reasons for his findings, Feliz' argument likewise fails on these grounds.

under a valid warrant; and (2) the evidence was sufficient for the jury to make a reasonable determination that Almonte was guilty beyond a reasonable doubt. Furthermore, we hold that Feliz' sentence enhancement was in accordance with the applicable Sentencing Guidelines in that there was a gun present during the drug transaction of which she had knowledge. And we cannot say that the sentencing judge erred in concluding that it was not clearly improbable that the gun would be used in the transaction. Finally, Feliz' sentence was within the applicable Sentencing Guidelines, therefore the sentencing judge was not required to give express reasons for his sentencing determination.

For the reasons assigned, the appeals are denied and the judgments of the district court are affirmed.