**UNITED STATES of America, Appellee,**

v.

**Milton Alcides CASTILLO, Defendant, Appellant.**

**No. 91–1274.**

United States Court of Appeals, First Circuit.

Heard June 4, 1992.

Decided Nov. 4, 1992.

Catherine C. Czar, Carver, Mass., for defendant, appellant.

Margaret Curran, Asst. U.S. Atty., with whom Lincoln C. Almond, U.S. Atty., and Kenneth P. Madden, Asst. U.S. Atty., Providence, R.I., were on brief for appellee.

Before CYR, Circuit Judge, RONEY,* Senior Circuit Judge, and BOUDIN, Circuit Judge.

---

* Of the Eleventh Circuit, sitting by designation.

CYR, Circuit Judge.

Appellant Milton Castillo challenges a sentence enhancement, pursuant to U.S.S.G. § 2D1.1(b)(1), for possessing a firearm during the commission of a drug offense. Finding no "plain error," we affirm.

During late May 1989, an informant arranged a meeting in Providence, Rhode Island, between an undercover agent, Special Agent Matthew Horace of the Bureau of Alcohol, Tobacco and Firearms ("ATF"), and appellant Castillo. On May 30, 1989, Castillo sold Agent Horace 110.7 grams of cocaine. During their tape-recorded conversation, Horace said he was looking for "pieces." Castillo said he could obtain more cocaine, as well as .25 caliber and .32 caliber pistols. On June 5, it was agreed that Castillo would sell Horace three ounces of cocaine base and a firearm, for $1,455.

Agent Horace, accompanied by another individual, again met Castillo in Providence on June 6. Castillo gave Horace a tissue box containing 84.1 grams of cocaine, an unloaded .22 caliber revolver and six bullets. On June 19, during another recorded conversation, Castillo told Horace that he had three more firearms for sale, as well as more cocaine. The next day, Castillo and two other men delivered 501.3 grams of cocaine to Horace, whereupon the drugs were seized and Castillo's companions were arrested. Castillo surrendered to the United States Drug Enforcement Agency on June 23, 1989.

A federal grand jury returned an indictment charging Castillo with three drug of-

fenses and one firearms offense.[1] The firearms charge was severed. Castillo was tried and convicted on all three drug counts in December 1989. In January 1991, Castillo pled guilty to the firearms charge, pursuant to a plea agreement which stipulated that if the agreement were approved by the court the maximum prison sentence on the firearms charge would not exceed fourteen months, to be served concurrently with the sentence on the drug charges. The plea agreement was approved.

The court sentenced Castillo to 121 months in prison, and five years supervised release, on each drug charge. The court calculated the guideline sentencing range ("GSR") from a base offense level of 26, by adding separate two-level increases for obstruction of justice, U.S.S.G. § 3C1.1, and for possession of a firearm during the commission of a drug offense, *id.*, § 2D1.1(b)(1). The adjusted offense level of 30 was combined with a category I criminal history, yielding a 97–to–121 month GSR.

■ Castillo challenges only the two level increase for possessing a firearm during the commission of a drug offense, contending that the .22 caliber revolver was not "connected with the offense" but was present at the scene of the cocaine deal on June 6 solely because it was being sold to Agent Horace. At sentencing, however, Castillo alluded to this contention only as grounds for urging a sentence at the low end of the 97–to–121 month GSR. At no time did Castillo challenge the two level enhancement itself. Indeed, the issue may even have been conceded by Castillo.[2] In any

---

**1.** The indictment charged conspiracy to possess, with intent to distribute, and conspiracy to distribute 500 or more grams of cocaine in violation of 21 U.S.C. § 846; possession with intent to distribute the same, in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(B) and 18 U.S.C. § 2; and distributing cocaine in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(C) and 18 U.S.C. § 2. The indictment further charged Castillo with transferring a firearm, knowing it would be used to commit a drug crime, in violation of 18 U.S.C. § 924(g) ("Whoever knowingly transfers a firearm, knowing that such a firearm will be used to commit a ... drug trafficking crime ... shall be imprisoned not more than 10 years, fined ...

or both.") (this section was subsequently renumbered § 924(h)).

**2.** Castillo's counsel stated at sentencing:

With respect to Count 4, again, we would only note that there is the plea agreement and that *the guideline score on Counts 1 through 3 have taken into consideration by a two-level increase for the possession of the gun,* that under the facts of this case this is not really the typical possession of a gun during the commission of a drug offense where the defendant was carrying a gun to protect either the drugs or to protect the proceeds, et cetera, that there was a very specific purpose for the

event, however, there was no "plain error." *See United States v. Bello-Perez*, 977 F.2d 664, 673 (1st Cir.1992); *United States v. Morales Diaz*, 925 F.2d 535, 540 (1st Cir. 1991).

Section 2D1.1(b)(1) provides for a two-level enhancement "[i]f a dangerous weapon (including a firearm) was possessed" during the commission of an offense involving drugs. As explained in the commentary, "[t]he adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." *Id.*, comment (n. 3); *see also United States v. Corcimiglia*, 967 F.2d 724, 726 (1st Cir.1992) (citing cases adopting "clearly improbable" standard). The enhancement "reflects the increased danger of violence when drug traffickers possess weapons." U.S.S.G. § 2D1.1(b)(1), comment (n. 3).

■ Under our caselaw there is no requirement that the weapon have been intended for use in perpetrating the drug offense, much less that it have been used in furtherance of the offense. *United States v. Ruiz*, 905 F.2d 499, 507 (1st Cir.1990) (no evidence appellant intended to use weapon he was carrying). The "mere possession," *id.*, or even the "mere presence[,] of a firearm ... [at] a site for drug transactions may allow a sentencing court to make the inference that the weapon was present for the protection of the drug operation," *Corcimiglia*, 967 F.2d at 727 (defendant had access to room in which drugs and firearms were found); *United States v. Preakos*, 907 F.2d 7, 9 (1st Cir.1990) (firearms and drugs found in residence); *United States v. Paulino*, 887 F.2d 358, 359 (1st Cir.1989) (weapon found in one apartment while

drugs were in adjacent apartment). As long as the "weapon's location makes it readily available to protect either the participants themselves during the commission of the illegal activity or the drugs and cash involved in the drug business, there will be sufficient evidence to connect the weapons with the offense conduct." *Corcimiglia*, 967 F.2d at 727.

■ Upon such a showing by the government,[3] the defendant must demonstrate "the existence of special circumstances that would render it 'clearly improbable' that the weapon's presence has a connection to the narcotics trafficking." *Id.* at 728. The required showing of "clear improbability" will not necessarily be made merely by demonstrating an alternative basis for the weapon's presence, even a lawful basis. *Id.* at 727 (weapons, for which defendant's husband possessed valid permits, used for protection of home); *United States v. Almonte*, 952 F.2d 20, 25 (1st Cir.1991), *cert. denied*, — U.S. —, 112 S.Ct. 1776, 118 L.Ed.2d 434 (1992) (it was "of little if any relevance" that weapon possessed by store owner might be used to fend off robbers); *Ruiz*, 905 F.2d at 508 (that defendant was required to carry weapon in performance of his duties as police officer did not render it "clearly improbable" that weapon was connected with drug offense).

We conclude that the district court in the instant case committed no error, much less plain error. Castillo arrived at the scene of the cocaine transaction in the possession of a firearm, which was enough to trigger an enhancement, *Almonte*, 952 F.2d at 25 (presence of gun is "controlling element triggering the enhancement").[4] Moreover, Castillo's possession of the .22 caliber revolver (and bullets) inside the tissue box he

presence of a gun, and that was set forth in Count 4. I think that sort of, *although it could be argued that it's double punishment to impose both a separate sentence on Count 4, and give a two-level increase, I think that militates in favor of granting a low end of the guidelines insofar as the guideline score on Counts 1 through 3 reflects the conduct that is Count 4....* (Emphasis added.)

3. The government bears the ultimate burden of "prov[ing] facts central to increasing a defendant's offense level by a preponderance of the

evidence." *United States v. Sklar*, 920 F.2d 107, 112 (1st Cir.1990); *United States v. Bradley*, 917 F.2d 601, 605 (1st Cir.1990).

4. Appellant's reliance on *United States v. Khang*, 904 F.2d 1219 (8th Cir.1990), is unavailing. Although the court there found that mere presence of a firearm would not justify an enhancement pursuant to U.S.S.G. § 2D1.1(b)(1), the government had stipulated that the firearm had no relationship to the crime and the court relied on the stipulation in reaching its decision. *Id.*

was delivering to Horace certainly made it readily available to Castillo for his own protection or the protection of the drugs and purchase money. *See Corcimiglia,* 967 F.2d at 727. Therefore, absent "special circumstances" which would show that it was "clearly improbable" that the weapon was connected with the drug offense, *see id.* at 728, there was sufficient evidence to support the district court's enhancement.

We find no such special circumstances. On the contrary, Castillo brought not only the unloaded .22 caliber revolver to the scene, but bullets as well, and the other participants in the drug transaction were aware that Castillo would have a weapon at the scene. Thus, we conclude that the weapon was connected with the offense; its presence was sufficient to support an inference that the weapon and ammunition would likely instill confidence in Castillo, if not fear in those with whom he was dealing, *cf. Ruiz,* 905 F.2d at 508 (defendant's carrying of gun "probably instilled confidence in those who relied upon him for protection ... and fear in those who dealt with his suppliers"), thus "increas[ing] the danger of violence," *see* U.S.S.G. § 2D1.1(b)(1), comment (n. 3). Most importantly, we cannot say that it is "clearly improbable" that Castillo would have used the gun during the drug transaction had he thought it necessary. *Almonte,* 952 F.2d at 25; *Corcimiglia,* 967 F.2d at 728 (same). Finally, the fact that Castillo had another, concededly *unlawful,* purpose for possessing the weapon at the scene of the drug exchange did not compel the conclusion that there were special circumstances which precluded the two level enhancement. *See Ruiz,* 905 F.2d at 508 (even *lawful* possession of firearm by on-duty policeman did not make it "clearly improbable" that the weapon was connected with the drug offenses of which officer was convicted). The district court judgment must be affirmed.

*Affirmed.*

at 1220–21. Of course, there was no such stipulation here.