UNITED STATES of America, Plaintiff,

v.

Robert F. GUARENTE, Defendant.

Crim. No. 92–25–B.

United States District Court,
D. Maine.

Jan. 22, 1993.

James McCarthy, Asst. U.S. Atty., Bangor, ME, for plaintiff.

Marshall Stern, Bangor, ME, Martin Leppo, Randolph, MA, for defendant.

## MEMORANDUM OF DECISION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS

GENE CARTER, Chief Judge.

On May 20, 1992, a federal grand jury returned an indictment against Defendant, Robert F. Guarente, charging him with possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). Defendant has filed a motion seeking an order suppressing the physical evidence seized from his residence and all written and oral statements he made to the police on October 1, 1991. (Docket No. 23) Based on the evidence presented at the hearing, the Court concludes that the motion should be denied.

### FACTS

On the morning of October 1, 1991, the Skowhegan Communication Center received a 911 telephone call informing them that there was a domestic dispute involving a weapon at the Guarente house in Madison, Maine. Madison Police Sgt. Lewis Gordon, Jr., was dispatched to respond to the call. While en route to the scene, Sgt. Gordon called the Somerset County Sheriff's Department for backup because a weapon was involved and officer safety could be threatened. Somerset County Deputy Sheriffs Sgt. William Crawford and Det. Alan Hart responded in a marked patrol car. Madison Police Officer Johnson Sargent also heard the call and responded.

When Officer Gordon arrived at the Guarente residence, there was a heated argument in process near the side door of the house. A man, later identified as Defendant's son-in-law, Steven Kenney, was in the doorway yelling "He's got a gun. He's got a gun." Officer Gordon ordered Kenney to come out of the house and Kenney complied. Two other men, Defendant and neighbor Bill Norton, then appeared in the doorway and they were ordered outside by police. All three men were patted down, separated and secured by the police. During this time, threats continued to be exchanged between Defendant and Kenney. Defendant told Sgt. Gordon that Kenney wanted to take his children (Defendant's grandchildren) against Defendant's wishes and admitted he threatened Kenney with the gun. The gun was not yet recovered.

Sgt. Gordon was in charge of the scene, along with Sgt. Crawford. Sgt. Gordon and Sgt. Crawford then went to the open side door of the house, announced their presence, and asked if anyone was inside. A woman, who police later identified as Defendant's wife, Elene Guarente, responded that she was behind the door and that her two grandchildren were still in the house. Sgt. Crawford asked the woman where the children were in the house and

she replied that they were upstairs. The officers walked through the doorway and stepped into the hall to talk with Elene Guarente who was in the adjacent living room. At this point, Sgt. Gordon, while standing just inside the door, noticed a rifle lying on a couch in the living room. He asked Elene Guarente about it and she told the officers that it was her gun, but that her husband had brought it downstairs. Sgt. Crawford checked to see if the rifle was loaded. Finding the rifle unloaded, Sgt. Crawford took it outside and placed it in the trunk of the Madison police cruiser. In the meantime, Sgt. Gordon looked around to see if anyone else was in the house and if anyone had been injured.

When Sgt. Crawford returned to the house, Sgt. Gordon was still talking to Elene Guarente. Elene Guarente explained that the disagreement was over her grandchildren and told the officers that her daughter, Lisa Kenney, was at the local courthouse trying to get a protection order to keep Kenney away from the children. As this discussion was taking place inside the house, the officers outside the house learned that Kenney was on probation and that his probation officer had put a "hold" on him. As a result, Kenney was arrested and Sgt. Gordon transported him to the Somerset County Jail.

Officers Sargent, Hart, and Crawford went into the house to interview Defendant and Elene Guarente further about the incident. Defendant explained the events leading up to the altercation as follows. Steven Kenney came to the house and talked to Defendant and Elene Guarente, about his wife and the children. After some conversation, Kenney told Defendant he was going to take the children with him. Defendant got a baseball bat and threatened Kenney, saying that he would not permit Kenney to take the children. Kenney continued to insist that he was taking the children, and Defendant got a .44 magnum rifle. Defendant pointed the rifle at Kenney and threatened him with it. At some point during the dispute, Kenney called the police.

Defendant then wrote out a statement detailing the above events. The officers completed the interviews described and left the scene.

## DISCUSSION

### A. Entry

First, Defendant contends that the rifle seized by the police officers should be suppressed because the officers' entry into his house was unlawful and the rifle was the product of an illegal search. Defendant points to the fact that the officers had no warrant, and argues that there was neither consent nor exigent circumstances to justify the entry or the warrantless search. This Court disagrees.

■ The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." The constitutional protection of privacy of the home is manifested in the rule that a search or seizure carried out on a person's premises without a warrant is *per se* unreasonable, subject to a few specifically established exceptions. *Coolidge v. New Hampshire*, 403 U.S. 443, 481, 91 S.Ct. 2022, 2045, 29 L.Ed.2d 564 (1971); *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967). *See also United States v. Morris*, 977 F.2d 677, 688 (1st Cir.1992). Exigent or emergency circumstances is one such established exception. The test for whether exigent circumstances exist is "whether there is such a compelling necessity for immediate action as will not brook the delay of obtaining a warrant." *United States v. Almonte*, 952 F.2d 20, 22 (1st Cir.1991), *cert. denied,* — U.S. ——, 112 S.Ct. 1776, 118 L.Ed.2d 434 (1992) (quoting *United States v. Adams*, 621 F.2d 41, 44 (1st Cir. 1980)).

■ The Court finds that exigent circumstances existed in this case. Although the dispute had apparently partially subsided when the officers approached the house, the officers did not know who or how many persons remained inside the house or what their dispositions might impel them to do.

The officers knew the gun was still inside the house. They could reasonably believe that there was a danger that there were persons inside the house who might seek to use the gun against the officers who were in the vicinity of the house[1] or, even against one or more of the persons the officers had called out of the house. Officer safety under these circumstances was clearly very much an issue.

Further the officers could reasonably believe that conditions in the house were not safe for those who remained inside. Based on the information received from the 911 call and Guarente's statement, the fact that the gun had not yet been discovered, and the volatile nature of domestic disputes generally, the officers had strong reason to believe that Elene Guarente and the children might be in immediate danger.[2] The threat of immediate danger to the officers and others at the scene as posed under these circumstances constitutes exigent circumstances of sufficient weight that no warrant was required for entry into Defendant's home. *See Michigan v. Tyler*, 436 U.S. 499, 509, 98 S.Ct. 1942, 1949, 56 L.Ed.2d 486 (1978) ("a warrantless entry by criminal law enforcement officials may be legal when there is compelling need for official action and no time to secure a warrant").

### B. *Plain View*

■ Once the officers were legally in the house, the discovery of the rifle was not the result of an improper search. Rather, the rifle was in "plain view," and properly seized. In *Horton v. California*, 496 U.S.

128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990), the Supreme Court set forth the criteria which must be satisfied before evidence will be admitted under the "plain view" doctrine. First, the officer "must not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed." *Id.* at 138, 110 S.Ct. at 2308. Second, not only must the item be in plain sight, but its "incriminating character" must be "immediately apparent." *Id.* Third, the officer must have a "lawful right of access to the object itself." *Id.*

■ As already shown, the officers did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed. Once in the house, the rifle was in plain view. Sgt. Gordon and Sgt. Crawford testified that from where they stood, just inside the front door, they saw the rifle lying on the couch in the adjoining living room. The officers knew that Defendant had used the rifle to menace Kenney, a violation of Maine's criminal code. *See* 17–A M.R.S.A. § 209 (1983) (criminal threatening). The officers had lawful access to the immediate interior of the house in order to check the safety of those individuals inside, to take statements and to further investigate the situation. The requirements of the "plain view" doctrine are satisfied here. Accordingly, the Court holds that the officers were justified in seizing the rifle that Defendant left lying on the couch in plain view.

The Court finds that the facts of this case justified the officers' warrantless entry into Defendant's house, as well as the subsequent seizure of the rifle.[3] In light of the Court's conclusion, it is unnecessary

---

**1.** There was clearly a continuing need for the officers to remain on the premises to investigate further the nature of the event that had brought them there, the circumstances of the alleged offense of criminal threatening, and to assure the safety of the children and others who remained on the premises.

**2.** In *United States v. Antwine*, 873 F.2d 1144, 1147 (8th Cir.1989), in upholding an officer's warrantless seizure of a gun, the Eighth Circuit Court of Appeals wrote that the officer's "legitimate concern for the safety of individuals may constitute 'exigent circumstances' justifying warrantless entries and searches." The court explained that the officer honestly believed that

"he needed to obtain the weapon prior to leaving children in the home" and "that another course of action was not available to him." *Id.* Similarly, in this case, the gun used to threaten Kenney was unaccounted for and the officers did not know who, other than the children and Elene Guarente, was in the house. Under these circumstances, the officers have a compelling need to investigate the situation to insure the safety of those persons inside the house and to recover the gun.

**3.** The Court notes that the rifle, once discovered, could legitimately be seized as evidence supporting the charge made by Kenney, and supported

to address the Government's alternative arguments regarding consent and "protective sweep."

### C. Statements

Next, Defendant claims that the statements he made to the police officers, both written and oral, should be suppressed as fruit of the allegedly illegal entry and seizure. Defendant has not specifically addressed the issue of the statements, but has merely grouped the statements he made to the officers into the general category of "fruit of the poisonous tree." Furthermore, Defendant cites no authority which would justify suppression of his statements on any basis independent of a claim that they are derivative of an illegal search and seizure of the rifle.

The facts and reasoning set out above establish that the entry into Defendant's house and the seizure of the rifle were reasonable and proper under the Fourth Amendment. Because the Court has upheld the entry and the seizure, Defendant cannot prevail on the ground that the statements are fruit of the poisonous tree. *See Colorado v. Spring*, 479 U.S. 564, 571–72, 107 S.Ct. 851, 856, 93 L.Ed.2d 954 (1987) ("[a] confession cannot be 'fruit of the poisonous tree' if the tree itself is not poisonous").

The Motion to Suppress is therefore *DENIED*.

by Elene Guarente, that Defendant had used the rifle to criminally threaten him.