**Onasis RIVERA–BELTRAN, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

**Civil No. 96–1282 (GG),
Criminal No. 92–0099 (GG).**

United States District Court, D. Puerto Rico.

Dec. 9, 1996.

**58**

Carlos R. Noriega, Hato Rey, PR, for petitioner.

Onasis Rivera–Beltrán, Jesup, GA, pro se.

Guillermo Gil, U.S. Attorney, Antonio R. Bazán, Asst. U.S. Atty., Hato Rey, PR, for respondent.

## OPINION AND ORDER

GIERBOLINI–ORTIZ, Senior District Judge.

Pending before this court is Onasis Rivera–Beltrán's *pro se* motion under 28 U.S.C. § 2255 arguing that he was denied effective assistance of counsel. Both Carlos Noriega, petitioner's trial counsel and former president of the Puerto Rico Bar Association, and the U.S. Attorney duly oppose.

## BACKGROUND

Onasis Rivera–Beltrán was one of the four defendants involved in an illegal drugs transaction held at the Albergue Olímpico[1] in Salinas, Puerto Rico. On April 21, 1992, a confidential informant met at the town of Salinas with the defendants and agreed that the delivery place would be the parking lot of the Albergue Olímpico. Ariel Díaz Correa, Víctor Agosto DeJesús and Orlando Febus–Cotto arrived at the meeting place. While waiting for the person who would bring the drugs, undercover Agent Enrique Nieves kept in contact through a cellular phone with Agent Reilley, who was with defendants. A short time later, Rivera–Beltrán arrived in a gray 300ZX Nissan. Díaz Correa signaled Agent Reilley to move towards Rivera–Beltrán's car. Petitioner displayed a black bag which contained two kilograms of cocaine. Agent Reilley made the pre-arrest signal by calling Agent Nieves on the cellular phone. All defendants were arrested without incident. The drug field tested positive for cocaine. A further analysis of the same established that the cocaine had a strength of 90% and a net weight of 2,011 grams. Upon searching the 300ZX car, a Jennings Model Jss pistol, .22 caliber, with six rounds of ammunition, was seized.

On the same day, defendants were charged in a three-count indictment. They were all charged in Count II for aiding and abetting to possess with intent to distribute two kilograms of cocaine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Petitioner was also charged in Count III for the use of a firearm during and in relation to the commission of an offense punishable under the Controlled Substances Act, in violation of 18 U.S.C. § 924(c). **(Docket entry # 1 of Criminal Case # 92–0099).** Febus–Cotto, Díaz Correa and Agosto DeJesús pleaded guilty. However, petitioner went to trial,

---

**1.** The Albergue Olímpico is a sports complex facility operated by the Commonwealth of Puerto Rico.

was found guilty as to Count II and not guilty as to Count III. Petitioner was sentenced to 108 months of imprisonment and 4 years of supervised release. On that occasion he was advised of his right to appeal. **(Docket entry # 76).**

Mr. Rivera–Beltrán filed the instant § 2255 motion claiming that he was denied effective assistance of counsel because his attorney failed to file proper pre-trial motions, to argue the lack of mens rea in light of the exculpatory evidence obtained in favor of petitioner and to appeal both the conviction and the two point enhancement imposed for the presence of a firearm during the offense committed. Attorney Carlos Noriega states that he informed Mr. Rivera–Beltrán that "according to his best professional opinion, an appeal would be without merit because there were no valid points of law that would result in the reversal of the conviction and sentence" and "[t]he whole case boiled down to the credibility of the witnesses." **(Docket entry # 5 of Civil Case # 96–1282).** The U.S. Attorney sustains that there was no violation of the Sixth Amendment because counsel did not prevail in his opposition to the two points enhancement nor because he determined that there were no valid grounds on which to file an appeal. In essence, that petitioner's complaint is a conclusory allegation at best.

After a careful review of the parties arguments, the record, applicable statutes and caselaw, we find that petitioner's request is without merit. Thus, it should be dismissed.

**INEFFECTIVE ASSISTANCE OF COUNSEL**

The Sixth Amendment of the U.S. Constitution guarantees criminal defendants the right to effective assistance of counsel. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Lema v. U.S.,* 987 F.2d 48, 51 (1st Cir.1993). This right does not require either a letter perfect or a successful defense. *Perry v. Leeke,* 488 U.S. 272, 279, 109 S.Ct. 594, 599, 102 L.Ed.2d 624 (1988). In order to prevail on a Sixth Amendment claim one must satisfy the two prongs set forth in *Strickland v. Washington,* supra. These are: (1) that counsel's representation fell below an objective standard of reasonableness; and (2) that prejudice resulted. *Matthews v. Rakiey,* 54 F.3d 908, 916 (1st Cir.1995) (citing *Strickland,* at 694, 104 S.Ct. at 2068).

As to the first prong, the touchstone is whether counsel has brought to "bear such skills and knowledge as will render the trial as a reliable adversarial process." *Scarpa v. Dubois,* 38 F.3d 1, 8 (1st Cir.1994) (citing *Strickland,* at 687, 104 S.Ct. at 2064). That is, the proper measure of attorney performance remains simply reasonableness under the prevailing professional norms taking also into consideration the totality of circumstances. *Id.* The evaluation as to this prong demands a fairly tolerant approach. *Scarpa,* at 8. Specifically, *Strickland* provides that:

Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second guess counsel's assistance after conviction and adverse sentence ... Because of difficulties inherent in making the evaluation, a court must indulge in a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, a defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

*Strickland,* at 689, 104 S.Ct. at 2065 (quoting *Michel v. Louisiana,* 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed. 83 (1955)). In conclusion, a petitioner bears an extremely heavy burden. The *habeas court* must evaluate the challenged conduct from counsel's perspective at the time, considering the totality of the circumstances before it, and making every effort to eliminate the distorting effects of hindsight. *Strickland,* supra. *See, Perron v. Perrin,* 742 F.2d 669, 673 (1st Cir.1984).

As to the second prong, petitioner must have suffered actual prejudice as a result of counsel's decision. *Strickland,* at 693, 104 S.Ct. at 2067. This "prejudice" element also presents a high hurdle to overcome. *Argencourt v. U.S.,* 78 F.3d 14, 16 (1st Cir.1996). Even if counsel's error is perceived as professionally unreasonable, that by itself does not warrant setting aside the judgement. *Strickland,* at 691, 104 S.Ct. at 2066. The

defendant must show that the error actually had an adverse effect on the final outcome of the trial. That, is, he must affirmatively show that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 693–94, 104 S.Ct. at 2067–68.

A quick glance at petitioner's claims and the criminal record of this case rapidly demonstrates that petitioner's list of counsel's alleged failures is unsubstantiated and based on conclusory and bald allegations of a Sixth Amendment violation. Counsel Noriega was petitioner's third legal representative in this case. Mr. Jeffrey Williams, one of petitioner's prior counsels, filed all the pre-trial motions necessary to properly defend him.[2] **See, Docket entry # 13–18.** Attorney Noriega assumed petitioner's legal representation after these motions had been granted. Petitioner does not indicate the need for any additional motion nor that the failure to file them caused any prejudice. In sum, petitioner's assertion that his attorney failed to file proper pre-trial motions, is frivolous.

Regarding the exculpatory evidence obtained, petitioner's allegations are likewise unfounded. On July 13, 1992 co-defendant Agosto DeJesús' wrote a letter to petitioner stating that Rivera–Beltrán had no knowledge of what had transpired in the Albergue Olímpico nor of the content of the bag and that he had beguiled him into taking the 300ZX car to the Albergue Olímpico under the pretext that he had to deliver his wife's vehicle. **(Docket entry # 60).** Petitioner handed this letter to attorney Noriega on August 24, 1992, the same day the jury was selected. Counsel immediately brought it to the attention of the court and requested additional time to interview co-defendant Agosto DeJesús.[3] The court indicated that trial would continue as scheduled. **(Docket entry # 58).**

The letter was eventually introduced into evidence as Exhibit E of the Defense. Both Agosto DeJesús and petitioner testified. **(Docket entry # 63).** Counsel Noriega submitted and argued a Rule 29 motion for acquittal. This motion was argued in chambers and in the presence of the defendant, who was also assisted by the court interpreter. The motion was denied as well as counsel Noriega's reconsideration of said ruling and the case went to the jury. **(Docket entry # 63).** The version of facts presented by the defense witnesses did not deserve credibility to the jury, who found Mr. Rivera–Beltrán guilty of aiding and abetting to possess 2 kilograms of cocaine with the intent to distribute it. **(Docket entry # 65).** In absence of an indication that Rivera–Beltrán did not receive a fair trial, that a constitutional error was committed or that the criminal process was tainted by a substantial deviation of the due process, we must coincide with counsel Noriega's characterization that this case boiled down to the credibility of the witnesses.

It is hornbook law that in making the determination of whether a conviction is based upon sufficient evidence the court of appeals will not assess the credibility of the witnesses, which is the sole function of the trier of fact. *U.S. v. Jadusingh,* 12 F.3d 1162, 1169 (1st Cir.1994); *U.S. v. Serrano,* 870 F.2d 1, 5 (1st Cir.1989) (citing *Burks v. U.S.,* 437 U.S. 1, 16, 98 S.Ct. 2141, 2150, 57 L.Ed.2d 1 (1978)). Therefore, petitioner has not overcome the strong presumption that counsel's conduct and decision not to appeal the conviction fell within the wide range of reasonable professional assistance recognized by the courts. *Strickland,* at 693–94, 104 S.Ct. at 2067–68; *Singleton v. U.S.,* 26 F.3d 233, 238 (1st Cir.1994). After all, an attorney's duty is to provide his client an effective

---

2. He filed motions for government agents to pre-. serve rough notes, writings and recordings; for disclosure of plea agreements, inducements or promises regarding codefendants, alleged co-conspirators and other government witnesses; for discovery pursuant to Rule 12, 16, Brady and Jencks Act; for notice of intent to introduce evidence of prior bad acts and/or classified as 404(b) material.

3. We take notice that there is no indication on the record that the other co-defendants had made exculpatory statements in favor of Mr. Rivera–Beltrán, as he alleges now in the instant motion. Neither has petitioner provided any proof that they made such statements. Hence, the allegation that his counsel failed to obtain affidavits from the other co-defendants, is without merit.

representation. "Effectiveness does not require that counsel jump through every conceivable hoop or engage in futile exercises". *Singleton*, at 239.

## ENHANCEMENT UNDER U.S.S.G. § 2D1.1(b)(1)

We arrive at the same conclusion regarding petitioner's sentence. Under § 2D1.1(b)(1) a district court is allowed to increase two levels of the offense "[i]f a dangerous weapon (including a firearm) was **possessed**" during offenses involving drugs. The adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense. **See,** U.S.S.G. § 2D1.1, comment, n. 3. That is, "[f]or the sentencing enhancement to be warranted, a certain nexus between the weapon and the offense must be shown." *U.S. v. Lagasse*, 87 F.3d 18, 22 (1st Cir.1996). **See also,** *U.S. v. Pineda*, 981 F.2d 569, 573 (1st Cir.1992).

■ The First Circuit has repeatedly recognized that:

> [w]hen the weapon's location makes it readily available to protect either the participants themselves during the commission of the illegal activity or the drugs and cash involved in the drug business, there will be sufficient evidence to connect the weapons to the offense conduct.

*U.S. v. Corcimiglia*, 967 F.2d 724, 727 (1st Cir.1992) (affirming trial court's enhancement for possession of firearms found in a closet of the same room were the drug was found); *U.S. v. Pineda*, supra (upholding enhancement for possession of a weapon, found in the same closet were the heroin was found, although defendant was acquitted of the charge of using the weapon). **See also,** *U.S. v. Ovalle–Márquez*, 36 F.3d 212, 224 (1st Cir.1994), cert. denied, —— U.S. ——, 115 S.Ct. 947, 130 L.Ed.2d 891 (1995). "The mere presence of a firearm in the defendant's car during the transaction is sufficient evidence to show a 'clear probability' that the weapon could have been used during the offense." *Corcimiglia*, at 727–28. **See also,** *Lagasse*, at 22 (citing *U.S. v. González–Vázquez*, 34 F.3d 19, 25 (1st Cir.1994)). Hence, as long as the implied purpose of the weapon's presence during the transaction was to "protect some aspect of the drug operation—*e.g.*, the drugs or the participants—even if it was not actually used to perpetrate the crime", the enhancement will be warranted. *Lagasse*, at 23.

■ In light of the above, it need not be shown that the firearm was used or intended to be used to perpetrate the drug offense. *Id.* **See also,** *U.S. v. Ruiz*, 905 F.2d 499, 507 (1st Cir.1990). This is so, because to sustain a conviction under the "use" prong of 18 U.S.C. § 924(c)(1), the government must show that the defendant actively employed the firearm during and in relation to the predicate crime. *Bailey v. U.S.*, —— U.S. ——, ——, 116 S.Ct. 501, 509, 133 L.Ed.2d 472 (1995). This is, that the defendant brandished, displayed, bartered, strike with, and most obviously, fired or attempted to fire, the firearm. *Id.*, at ——, 116 S.Ct. at 505. Due to the above definition of the offense of "using a firearm", a defendant cannot be charged under § 924(c)(1) for merely storing a weapon near drugs or drug proceeds. *Id.*, at ——, 116 S.Ct. at 508. Accordingly, "an acquittal on a charge of **using** a firearm in connection with a drug transaction does not foreclose a sentencing enhancement for **possession** of a gun during a drug transaction." *U.S. v. De León Ruiz*, 47 F.3d 452, 454–55 (1st Cir.1995). **See also,** *U.S. v. Pineda*, at 574.

■ In short, "[t]he defendant may avoid the enhancement only by demonstrating 'special circumstances' rendering it 'clearly improbable' that the weapon was connected to the drug trafficking offense." *Lagasse*, at 22 (citing *Ovalle–Márquez*, at 224).

■ In the case at hand, petitioner never disclosed nor mentioned the firearm. Hence, for purposes of § 924(c)(1) he never actively employed or "used" it. Appropriately, the jury found him not guilty of the offense charged in Count III. Nonetheless, there was uncontroverted evidence that the cocaine was brought in the vehicle driven by Rivera–Beltrán and that a fully loaded gun was found underneath the floor mats on the driver's side of said automobile. In other words, that a gun was possessed during the narcot-

ics trafficking. Besides the version of facts presented by the defense during trial and not believed by the jury, namely, that petitioner went to the Albergue Olímpico in a borrowed vehicle to help a friend with an errand and had no knowledge of the existence of the drugs and the weapon, petitioner has not demonstrated the clear improbability of the presence of the weapon in connection with the drugs. Therefore, as we previously determined in our order denying counsel Noriega's opposition to the Pre–Sentence Report, the enhancement was warranted because:

the government established by a preponderance of evidence that a firearm was present at the site of the drug transaction, and that it was clearly probable the defendant could have used the weapon during the drug offense. In addition, we find no reason for the defendant to have a gun present at the site of the drug transaction if not for the sole purpose of using it if needed.

(See, Docket entry # 99).

█ Even assuming *arguendo* that counsel Noriega should have appealed the enhancement under § 2D1.1(b)(1), petitioner has not proven that but for counsel's "unprofessional errors" he was prejudiced because the result of the proceeding would have been different. *Strickland,* at 694, 104 S.Ct. at 2068. There was sufficient evidence to connect the weapon to the offense conduct. In absence of a showing of actual prejudice as a result of counsel's decision, no violation of the Sixth Amendment has occurred. *Strickland,* at 693, 104 S.Ct. at 2067; *Argencourt v. U.S.,* 78 F.3d 14, 16 (1st Cir.1996).

In conclusion, petitioner has failed to prove that his trial counsel's performance was not within the wide range of reasonable professional assistance recognized by the courts nor that it was sufficiently prejudicial to undermine confidence in the outcome of the trial. *Strickland,* at 693–94, 104 S.Ct. at 2067–68; *Singleton,* at 238. In other words, petitioner has not met the two prongs of the Strickland test for violations of the Sixth Amendment.

**WHEREFORE,** for the reasons herein discussed, Onasis Rivera–Beltrán's § 2255 motion is hereby **DENIED** and this action

**DISMISSED.** Judgment will be entered accordingly.

**SO ORDERED.**