No. 96-1534

 UNITED STATES OF AMERICA,

 Appellee,

 v.

 CECILIO F. MCDONALD,

 Defendant, Appellant.

 

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF RHODE ISLAND

 [Hon. Raymond J. Pettine, Senior U.S. District Judge]

 

 Before

 Selya, Circuit Judge,

 Hill,* Senior Circuit Judge,

 and Boudin, Circuit Judge.

 

 Robert D. Dimler , by appointment of the court, for appellant.
 Margaret  E.  Curran, Assistant United States Attorney, with
whom Sheldon  Whitehouse, United States Attorney, and Zechariah
Chafee, Assistant United States Attorney, were on brief, for
appellee.

 

 August 20, 1997
 

 

*Of the Eleventh Circuit, sitting by designation.

 SELYA, Circuit  Judge. In this proceeding, defendant-

appellant Cecilio F. McDonald asks in the alternative (1) that we

vacate his guilty plea because the district court failed to advise

him of the applicable mandatory minimum sentence during the plea

colloquy, or (2) that we set aside his sentence due to an alleged

error in the calculation of his adjusted offense level. Taking

second things first, we find no computational error. And while

McDonald's first point is well-taken we agree that the district

court erred in failing to apprise the appellant of the mandatory

minimum sentence,  see Fed. R. Crim. P. 11(c)(1) we find that this

error was benign. Consequently, we affirm the appellant's

conviction and sentence.

 I.

 Background

 On September 18, 1995, the authorities searched the

appellant's one-bedroom apartment in Providence, Rhode Island,

pursuant to a warrant. They found a cornucopia of drugs, money,

and drug-related paraphernalia hidden in the parlor: 160.32 grams

of crack cocaine, 2,656.47 grams of marijuana, $16,050 in cash,

three digital scales, and two dust masks. They also found a 9mm

semi-automatic pistol and a plastic bag containing several live

rounds in a secret compartment in the bathroom vanity.

 A federal grand jury subsequently returned an indictment

charging the appellant with possessing fifty grams or more of

cocaine base (crack), intending to distribute it, in violation of

21 U.S.C. S 841(a)(1) and (b)(1)(A) (1994). In due course, the

 3

appellant pleaded guilty to the charge. During the plea colloquy,

the district court questioned him extensively in order to ascertain

that his guilty plea was voluntary, knowing, and intelligent. Yet

the court neglected to mention that, due to the amount of crack

involved, the offense carried a mandatory minimum ten-year

sentence.

 Following standard practice, the district court

commissioned the preparation of a Presentence Investigation Report

(PSI Report). In it, the probation department reported that the

amount of crack involved called for a base offense level (BOL) of

36; recommended a series of adjustments to the BOL; hypothesized

that the appellant belonged in criminal history category III; and

forecast a guideline sentencing range of 210-262 months. In two

places, the PSI Report unambiguously declared that a mandatory

minimum sentence of ten years applied. The appellant (who told the

court at sentencing that he had been afforded an ample opportunity

to read and digest the PSI Report) filed a covey of objections, but

he neither took issue with the applicability of the mandatory

minimum sentence nor complained that its existence had previously

been withheld from him.

 At the disposition hearing, the district judge determined

that the BOL was 34, not 36. He made two adjustments, subtracting

three levels for acceptance of responsibility, see USSG S3E1.1

(1995), and adding two levels for possession of a firearm,  see USSG

S2D1.1(b)(1) (1995). The court then concluded that the appellant

belonged in criminal history category I. These determinations

 4

yielded a sentencing range of 135-168 months. See USSG Ch.5, Pt.

A (Sentencing Table) (adjusted offense level 33, criminal history

category I). The judge thereupon imposed a 135-month incarcerative

sentence. This appeal ensued.

 II.

 Discussion

 We begin with the weapons enhancement, cognizant that the

propriety vel non of that ruling may affect the harmless error

analysis which the appellant's principal assignment of error

entails.

 A.

 The Weapons Enhancement

 We review factual determinations made in the course of

sentencing for clear error, mindful that such determinations need

only be supported by preponderant evidence. See United States v.

Lagasse, 87 F.3d 18, 21 (1st Cir. 1996). Moreover, the district

court's application of a relevant guideline to the facts of a given

case is a fact-sensitive matter that engenders clear-error review.

See United  States v. Gonzalez-Vazquez, 34 F.3d 19, 24 (1st Cir.

1994). Under these standards, we must uphold the weapons

enhancement in this case.

 There is no cause to tarry. A firearm is a "dangerous

 This is to be distinguished from questions anent the
interpretation or overall applicability of particular guidelines to
particular situations. Such questions are questions of law and are
therefore subject to de novo review. See United States v. Muniz,
49 F.3d 36, 41 (1st Cir. 1995).

 5

weapon," and the relevant guideline instructs the sentencing court

to increase the BOL by two levels if the defendant possessed "a

dangerous weapon." USSG S2D1.1(b)(1). The Sentencing Commission's

commentary and application notes weigh heavily in construing the

guidelines, see Stinson v. United  States, 508 U.S. 36, 42-46

(1993);  United States v.  Fiore, 983 F.2d 1, 2 (1st Cir. 1992), and,

in regard to this guideline, the Commission tells us that "the

adjustment should be applied if the weapon was present, unless it

is clearly improbable that the weapon was connected with the

offense." USSG S2D1.1(b)(1), comment. (n.3). We have consistently

honored this advisory,  see,  e.g.,  Gonzalez-Vazquez, 34 F.3d at 24;

United States v. Jackson, 3 F.3d 506, 509 (1st Cir. 1993); United

States v. Ruiz, 905 F.2d 499, 507 (1st Cir. 1990), and the

appellant has offered us no persuasive reason to repudiate it

today.

 Of course, a certain nexus between the weapon and the

offense must be shown in order for the enhancement to lie. See

Lagasse, 87 F.3d at 22. But to establish the link the prosecution

need only prove that the defendant possessed the weapon during the

currency of the offense, not necessarily that he actually used it

in perpetrating the crime or that he intended to do so. See id.

Furthermore, a defendant need not have had the weapon on his person

for the enhancement to apply; any possession actual or

constructive can trigger the two-level increase. See United

States v. Hill, 79 F.3d 1477, 1485 (6th Cir. 1996). Thus, "when

the weapon's location makes it readily available to protect either

 6

the participants themselves during the commission of the illegal

activity or the drugs and cash involved in the drug business, there

will be sufficient evidence to connect the weapons to the offense

conduct." United  States v. Corcimiglia, 967 F.2d 724, 727 (1st

Cir. 1992);  accord  Lagasse, 87 F.3d at 22;  United States v.  Ovalle-

Marquez, 36 F.3d 212, 225 (1st Cir. 1994).

 Here, the government satisfied its entry-level burden.

It showed that the appellant constructively possessed a weapon 

after all, the gun was found in the bathroom vanity of the home

that he alone occupied and a reasonable factfinder could infer

from the apartment's contents that the premises served as the

command post for the appellant's drug-trafficking activities. In

short, the weapon, though hidden, was readily available to protect

the appellant, the cash, and the drugs that he kept on the

premises.

 Where, as here, the government has shown that a firearm

possessed by the defendant was present during the commission of the

offense, the burden shifts to the defendant to persuade the

factfinder that a connection between the weapon and the crime is

clearly improbable. See Jackson, 3 F.3d at 509. On this record,

we cannot fault the lower court for holding that the appellant

failed to carry this burden. To be sure, the appellant denied all

knowledge of the gun. But he neither adduced any evidentiary

support for this denial nor suggested an innocent explanation for

the gun's presence. Credibility calls are for the trier, see,

e.g.,  United States v.  St. Cyr , 977 F.2d 698, 706 (1st Cir. 1992),

 7

and Judge Pettine was not obliged to credit the appellant's

unsupported disclaimer of guilty knowledge.

 To summarize, we discern no clear error in the court's

imposition of a two-level enhancement pursuant to USSG

S2D1.1(b)(1).

 B.

 The Rule 11 Colloquy

 We turn now to the appellant's principal claim a claim

that makes its debut on appeal. In many instances, we will decline

to entertain issues that were not seasonably advanced in the nisi

prius court. However, a different rule sometimes obtains when a

defendant seeks for the first time to set aside his guilty plea in

the court of appeals. See, e.g., United  States v. Parra-Ibanez,

936 F.2d 588, 593 (1st Cir. 1991); see generally Fed. R. Crim. P.

32(e). Here, the defendant's allegation implicates a core concern

of Rule 11 and the record on appeal is adequately developed to

permit direct review. See United States v. Martinez-Martinez, 69

F.3d 1215, 1219 (1st Cir. 1995), cert. denied, 116 S. Ct. 1343

(1996). Hence, we consider the appellant's argument.

 When a defendant moves in the district court to withdraw a
guilty plea, we usually test that motion by means of a set multi-
part analysis. See  United States v.  Gonzalez-Vazquez, 34 F.3d 19,
22-23 (1st Cir. 1994); United  States v. Parrilla-Tirado, 22 F.3d
368, 371 (1st Cir. 1994). We have on occasion used this same
analytic tool as a guide in cases in which a defendant alleges for
the first time on appeal that the district court violated Criminal
Rule 11. See, e.g., United  States v. Lopez-Pineda, 55 F.3d 693,
696 (1st Cir. 1995). The multi-part test is not obligatory. Here,
where both the trial court's error and the harmlessness of that
error are manifest, we need not perform the multi-part test.

 8

 By entering a guilty plea, a defendant effectively waives

a myriad of important constitutional rights. Thus, due process

demands that such a plea be made voluntarily, knowingly,

intelligently, and with an awareness of the overall circumstances

and probable consequences. See Boykin v. Alabama, 395 U.S. 238,

243 n.5 (1969). To this end, Rule 11 has a predominantly

prophylactic purpose. The main thrust of the rule is to ensure

that a defendant who pleads guilty does so with full comprehension

of the specific attributes of the charge and the possible

consequences of the plea. See United  States v. Lopez-Pineda, 55

F.3d 693, 695 (1st Cir. 1995).

 In neglecting to apprise the appellant of the mandatory

minimum sentence applicable to the offense of conviction, the

district court tarnished an otherwise irreproachable plea colloquy

and violated Rule 11. See Fed. R. Crim. P. 11(c)(1) (stating,

among other things, that "before accepting a plea of guilty . . .

the court must address the defendant personally in open court and

inform the defendant of, and determine that the defendant

understands, . . . the mandatory minimum penalty provided by law").

It follows that the appellant's claim of error is well founded.

 This determination does not end our inquiry. Not every

violation of Rule 11 invalidates a guilty plea, and the Criminal

Rules specifically instruct courts to disregard any defect in a

Rule 11 proceeding that does not affect the defendant's substantial

rights. See Fed. R. Crim. P. 11(h). In other words, even an error

implicating Rule 11's core concerns will not require vacating a

 9

guilty plea if the error, in context, is harmless.

 In the case at hand, the error did not impair the

appellant's substantial rights. The court imposed a sentence of

135 months fifteen months longer than the mandatory minimum and

calculated that sentence without any reference to the mandatory

minimum. It is, therefore, readily apparent that because the

guideline sentencing range (at its nadir) outstripped the mandatory

minimum, the latter had no relevance to, and no actual effect upon,

the appellant's sentence. Consequently, the district court's

failure to apprise the appellant of the mandatory minimum was an

error that did no discernible harm. See Lopez-Pineda, 55 F.3d at

696; United States v. Johnson, 1 F.3d 296, 303 (5th Cir. 1993).

 The appellant's fallback position is that, as a result of

the court's failure to inform him of the mandatory minimum

sentence, he was deprived of the benefit of his bargain. This

argument rests on the notion that, without the mandatory minimum,

the appellant had a chance to obtain a sentence less than 120

months; and, while this prospect induced him to change his plea,

the undisclosed mandatory minimum rendered the prospect illusory.

 The short answer is that this notion does not comport

with the facts: any chance that the appellant had to obtain a

sentence of less than 120 months depended, at least in part, on

avoiding the two-level upward adjustment for possession of a

firearm. Since that enhancement was properly awarded, without any

 Indeed, the existence of the mandatory minimum presented the
appellant with an opportunity, through the operation of the so-

 10

reference to the mandatory minimum, the court's omission could not

have affected the appellant's substantial rights.

 We need go no further. The purpose of insisting that the

judge inform a defendant of the existence and potential

applicability of a mandatory minimum sentence is to ensure that the

defendant is not induced to change his plea because of a totally

unrealistic expectation as to how mild a sentence he might receive.

That purpose was not in any way frustrated by the omission that

occurred here. Since the district court's bevue did not harm or

prejudice the appellant in any cognizable way, the appeal founders.

Affirmed.

called "safety valve" provision, see 18 U.S.C. S 3553(f) (1994);
USSG S5C1.2, to obtain an appreciably lower sentence. In the final
analysis, however, the weapons enhancement blocked this avenue too.
See USSG S5C1.2(2).

 We note in passing that the evidence strongly suggests that
the appellant, notwithstanding the district court's omission, knew
of the mandatory minimum sentence all along. For instance, he
confirmed at the disposition hearing that he enjoyed ample
opportunity to read the PSI Report and discuss it with his counsel
 and that report states in two places that the offense carries a
ten-year mandatory minimum sentence. Furthermore, the possible
application of the "safety valve" provision was discussed in open
court at the change-of-plea hearing and that provision only comes
into play where a mandatory minimum sentence is in effect.

 11